IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STANLEY L. BROWN, :
(AIS #267049)
:
    Plaintiff,
:
vs.                                                        CIVIL ACTION 08-00694-KD-N
:
WARDEN ROGER GOODMAN, et al.,
:
    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Dallas County Jail Warden Roger Goodman; Jail Officers David Brown, Mike Rogers, Richard Waugh,[1] Beandre Watts, and Steve Coleman;[2] and Dr. Chudy Okoye (Docs. 24, 25, 26, 27); and Plaintiff's Opposition thereto. (Doc. 29). After consideration of these pleadings, and for the reasons set forth below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed

---

[1] The defendant referenced by Plaintiff in his Complaint as "Officer Walt" has been identified as Officer Richard Waugh. (Doc. 24).

[2] The defendant referenced by Plaintiff in his Complaint as "Officer Steave" has been identified as Officer Steve Coleman. (Doc. 26).

with prejudice.

## I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. On November 8, 2008, Plaintiff was booked into the Dallas County Jail on a charge of receiving stolen property.[3] (Doc. 25, att. 9 at 6, 9, 17). According to Plaintiff, after arriving at the jail, Defendants Goodman, Rogers, Waugh, and Brown failed to provide him shower shoes, and he subsequently developed a bad foot fungus; they also failed to provide him a bath towel, and he had to go one week without taking a shower "because it was very cold and [he] had nothing at all to dry off with;" and for eight days in November (from November 8, 2008, to November 16, 2008), they refused to give him a bed mattress and cover, and he had to sleep on a hard, iron bed frame. (Doc. 1 at 4).

In addition, from November 8, 2008, to November 29, 2008, Defendants Goodman, Brown, and Coleman failed to provide Plaintiff cleaning supplies to clean his "nasty" shower and room, and they allowed inmates to slide food trays under the doors in the morning, "where rats run around freely." (Doc. 7 at 4). Further, Defendants Goodman, Watts, and Waugh allowed convicted murderers to pass out food trays, and one such inmate got mad at Plaintiff and spit in Plaintiff's food; also, they refused to give

---

[3] The record shows that Plaintiff was arrested, incarcerated, and released from the Dallas County Jail several times in 2008. (Doc. 25, att. 1; Doc. 25, att. 9 at 9, 17). The parties agree that Plaintiff was incarcerated in the Dallas County Jail during the month of November, 2008 (beginning November 8, 2008), which is the time period about which Plaintiff complains in this action.

2

Plaintiff a new water cooler, and the old one had a lot of mildew in it. (Doc. 3 at 4). Last, from November 8, 2008, to November 20, 2008, Defendants Goodman, Watts, Waugh, and Dr. Okoye refused to provide Plaintiff medical treatment for his foot fungus and for neck and back problems that he suffered from sleeping on the hard bed frame. (Id.).

On December 1, 2008, Plaintiff filed the present § 1983 action. (Doc. 1). On December 3, 2008, and December 5, 2008, Plaintiff filed three additional complaints, adding defendants and claims to the original complaint filed on December 1, 2008. (Docs. 3, 5, 7). On July 17, 2009, the Court ordered that Plaintiff's third complaint (Doc. 5) be extracted and consolidated with a separate action filed in this Court by Plaintiff on February 6, 2009, Brown v. Goodman, 09-63-CG-N.[4] (See Order in 09-63, Doc. 16).

In the three complaints remaining in this action (Docs. 1, 3, 7), Plaintiff alleges that Defendants subjected him to inhumane conditions of confinement and denied him medical treatment for a foot fungus and back and neck problems, as set forth above. Plaintiff seeks compensatory and injunctive relief.[5] (Id.).

---

[4] The claims alleged by Plaintiff in Brown v. Goodman, 09-63-CG-N, arise out of an assault on Plaintiff by other inmates at the Dallas County Jail that occurred on November 29, 2008, and are not at issue in this action.

[5] The record shows that Plaintiff is presently incarcerated at Draper Correctional Facility. (Doc. 29). "'[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.'" Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (quoting Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)); accord Harrison v. Culliver, 2008 WL 2788352, *3 (S.D. Ala. 2008) (unpublished). "Past exposure to illegal conduct does not

In their Answers and Special Reports filed on February 16, 2010, February 17, 2008, and February 18, 2008, Defendants deny that they violated Plaintiff's constitutional rights and assert various defenses including absolute and qualified immunity.[6] (Docs. 24, 25, 26, 27). On February 19, 2010, the Court entered an Order converting Defendants' Special Reports and Answers to a Motion for Summary Judgment. (Doc. 28). On March 1, 2010, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, reasserting his claims against Defendants. (Doc. 29). Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett,

---

constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." Wahl, 773 F.2d at 1173 (11th Cir. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). There being no such evidence in this case, Plaintiff's claim for injunctive relief related to his incarceration at the Dallas County Jail is moot.

[6] Having found herein that Plaintiff's allegations do not establish a constitutional violation, the issue of whether, and to what extent, Defendants may be entitled to absolute or qualified immunity is pretermitted.

477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004). However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III. DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of the conditions of his confinement and

denial of medical care while incarcerated at the Dallas County Jail. According to Plaintiff, these deprivations occurred from November 8, 2008, to November 29, 2008. (Docs. 1, 3, 7).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989). The record indicates that Plaintiff was being held in the Dallas County Jail in November, 2008, as a pretrial detainee on a charge of receiving stolen property. (Doc. 25, att. 9 at 17). "'Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)). It makes no difference, however, whether Plaintiff was a pretrial detainee or a convicted prisoner because "'the applicable standard is the same, so decisional law

6

involving prison inmates applies equally to cases involving ... pretrial detainees.'" Id.; see also Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) ("'[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'").

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference' to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

Id. at 199-200 (citations omitted).

To prevail on an Eighth Amendment claim under §1983, Plaintiff must make both an objective and a subjective showing, Farmer, 511 U.S. at 834-35, and he "must also show that the constitutional violation caused his injuries." Marsh v. Butler County, Ala., 268 F.3d 1014, 1028 (11th Cir. 2001). The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994) (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

The required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted). In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Id. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk; conscious awareness is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Having set forth the general constitutional principles applicable to this case, the Court will now address Plaintiff's specific claims.

      A.    <u>Conditions of Confinement</u>.

As discussed above, Plaintiff complains that, while incarcerated at the Dallas County Jail, he was never issued shower shoes; he was denied a bath towel for one week; he was denied a bed mattress and cover for eight days; he was denied cleaning supplies for twenty-one days; he was denied a non-mildewed water cooler; inmates were allowed to slide food trays under the doors "where rats run around freely;" and murderers were allowed to pass out food trays. (Doc. 1 at 4; Doc. 3 at 4; Doc. 7 at 4). Defendants respond with evidence that it is the policy of the Dallas County Jail to provide inmates humane conditions of confinement, including adequate food, clothing, shelter, and

medical care. (Doc. 25, att. 2 at 5). Upon admittance to the jail, each inmate receives coveralls, shoes, a mattress and sheets to sleep on, a toothbrush, toothpaste, soap, toilet paper, and towels. (Id.). In the event that these items are in short supply upon an inmate's admittance to the jail, they are provided within twenty-four hours, and supplies are also available for purchase at the jail store. (Id.). In addition, inmates are responsible for cleaning their own areas and are provided cleaning supplies for that purpose. (Id.).

In an action such as this, in which Plaintiff alleges inhumane conditions of confinement, the objective component requires the Court to look to "contemporary standards of decency" to determine whether the challenged conditions resulted in a deprivation of "the minimal civilized measure of life's necessities" or "basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347, 348, n.13 (1981). The Court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (emphasis in original) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993)).

"[T]he Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. Rather, all that is required under the Eighth Amendment is that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer, 511 U.S. at

832 (citations omitted); see also Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (finding that the Eighth Amendment requires that a prisoner receive "reasonably adequate food, clothing, shelter, and sanitation.").

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" Hudson, 503 U.S. at 9 (citations omitted). "While an inmate 'need not await a tragic event' before seeking relief, . . . he must at the very least show that a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety. . . ." Chandler, 379 F.3d at 1289 (citations omitted). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305. Prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.

With respect to Plaintiff's complaint that he was denied a bed mattress and cover for a period of eight days and had to sleep on a hard, iron bed frame, the Court begins with the principle that inmates have no absolute right to bedding under the Eighth Amendment. See Beard v. Strength, 2008 WL 2754094, *3 (S.D. Ga., July 14, 2008) (unpublished) (rejecting an inmate's claim that being forced to sleep directly on the floor during periods of overcrowding violated his Eighth Amendment rights, holding: "[a]lthough Plaintiff may argue that he had an absolute right to bedding, no such right

exists.") (citing Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995) ("there is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding;" inmate's *four-day* confinement in a strip cell did not violate the Eighth Amendment).  See also Fischer v. Ellegood, 238 Fed. Appx. 428, 433 (11th Cir. 2007) (requiring an inmate to sleep on the "bare cement floor" without a mattress for *five days* during periods of overcrowding does not amount to an Eighth Amendment violation); Hamm, 774 F.2d at 1575 (temporarily requiring an inmate to sleep on a table or on the floor with a mattress because of overcrowding does not violate the Eighth Amendment); Mosley v. Bishop, 2009 WL 1564778, *5-6 (S.D. Ala., June 1, 2009) (denial of mattress and bed linens for *nine days*, which forced inmate to sleep on a "cold, raw steel slab," did not "rise to the level of a deprivation of the minimal civilized measure of life's necessities or of a basic human need.); White v. Marshall, 2008 WL 4826283, *3, *8-9 (M.D. Ala., November 5, 2008) (unpublished) (plaintiff's confinement for thirty days in a strip cell with no clothing except for a paper gown, no mattress for *twenty-four* days, and no blanket was not a deprivation of "the minimal civilized measures of life's necessities.").

In his complaint, Plaintiff has alleged considerable discomfort in having to sleep without a mattress and cover for eight days, stating: "I had to sleep on the hard iron bed frame a whole week.  My body was hurting and I was very cold day and every night." (Doc. 1 at 4).  Plaintiff also suggests that he experienced some unspecified problem with

his neck and back from sleeping on the bed frame.[7] (Doc. 3 at 4). Assuming Plaintiff's allegations as true, there is absolutely no evidence that this temporary sleeping arrangement, during which time Plaintiff had to sleep on a hard, iron bed frame without a mattress or cover for eight days, posed "an unreasonable risk of serious damage to his future health or safety." Chandler, 379 F.3d at 1289 (internal quotation marks omitted). Moreover, even assuming, *arguendo*, that it did pose such a risk to Plaintiff's health, there is no evidence that Defendants knew of that risk and disregarded it. Farmer, 511 U.S. at 837.

Next, with respect to Plaintiff's complaint that he was deprived of shower shoes (for an undisclosed amount of time) and a bath towel (for one week), the evidence is undisputed that these items were available for purchase in the jail store. (Doc. 25, att. 7 at 2-3). Therefore, even if Plaintiff did develop a foot fungus from showering in his bare feet and did go without a shower for one week because he had nothing with which to dry off, shower shoes and a bath towel were available to him. In fact, Plaintiff purchased shower shoes, as well as various food items, clothing, and toiletries from the jail store in December, 2008. (Id.). In any event, neither the denial of shower shoes nor a bath towel constitutes the deprivation of a "basic human need[]." Rhodes, 452 U.S. at 347.

Finally, Plaintiff complains that Defendants allowed inmates to slide food trays

---

[7] In alleging his claim for denial of medical treatment, Plaintiff stated that Defendants "refuse[d] to give me medical attention when I put in request asking to see doctor for my bad feet fungus and for my neck and back from sleeping on the hard bed frame." (Doc. 3 at 4). This is the only reference that Plaintiff makes in this action to a neck or back ailment.

13

under the doors "where rats run around freely;" that convicted murderers were allowed to pass out food trays, and one spit in Plaintiff's food; that Plaintiff was denied cleaning supplies for twenty-one days; and that Plaintiff's water cooler had mildew in it. (Docs. 3, 7). While the circumstances alleged by Plaintiff are unquestionably unpleasant, there is no evidence that any of these conditions resulted in "an unreasonable risk of serious damage to [Plaintiff's] future health or safety." Chandler, 379 F.3d at 1289 (internal quotation marks omitted). Moreover, even assuming, *arguendo*, that they did pose an excessive risk to Plaintiff's health, there is no evidence that Defendants knew of the risk and disregarded it. Farmer, 511 U.S. at 837.

Because Plaintiff has failed to allege circumstances that would establish a deprivation so "extreme" or "grave" as to deprive him of the minimal civilized measures of life's necessities or a basic human need, he has failed to meet the objective component of his Eighth Amendment claim. Hudson, 503 U.S. at 9; Chandler, 379 F.3d at 1289; Rhodes, 452 U.S. at 347. Moreover, because Plaintiff has failed to allege circumstances that would establish that Defendants knew of and disregarded an excessive risk to his health or safety, Farmer, 511 U.S. at 837, he has failed to meet the subjective component of his Eighth Amendment claim as well. Thus, Plaintiff has failed to state a constitutional violation based upon the conditions of his confinement in the Dallas County Jail.

    B.    Medical Care Claim.

Plaintiff also seeks redress in this action against Warden Goodman, Dr. Okoye, Officer Watts, and Officer Waugh for an alleged constitutional deprivation arising out of

the denial of medical treatment from November 8, 2008, to November 20, 2008, for a foot fungus and for neck and back problems associated with sleeping on a hard bed frame for eight days (from November 8, 2008, to November 16, 2008). (Doc. 3 at 4; Doc. 1 at 4). As discussed above, an Eighth Amendment claim is said to have an objective component, "which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth (or Fourteenth) Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994), overruled in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187 (citations omitted). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

Also, in order to meet the required subjective element of his denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Hill, 40 F.3d at 1186.

In Estelle, the Supreme Court established that "deliberate

> indifference" entails more than mere negligence. Estelle, 429
> U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct.
> 1970. The Supreme Court clarified the "deliberate
> indifference" standard in Farmer by holding that a prison
> official cannot be found deliberately indifferent under the
> Eighth Amendment "unless the official *knows of* and
> *disregards an excessive risk to inmate health or safety;* the
> official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference." Farmer, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added). In interpreting
> Farmer and Estelle, this Court explained in McElligott that
> "deliberate indifference has three components: (1) subjective
> knowledge of a risk of serious harm; (2) disregard of that risk;
> (3) by conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258
> (stating that defendant must have subjective awareness of an
> "objectively serious need" and that his response must
> constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

In this case, Plaintiff's medical records show only that, on May 20, 2009, he filled out a "Prisoner Request Form" asking to see the doctor "A.S.A.P." for a "very bad cold," and he was treated by the doctor the same day.[8] (Doc. 25, att. 8 at 2-3). Neither his medical records nor his inmate file reflect any request for treatment for a foot fungus or for neck or back problems. (Doc. 25, att. 9). Assuming, *arguendo*, however, that these Defendants did deny Plaintiff medical treatment for a foot fungus and for neck or back problems associated with sleeping on a hard bedframe for eight days, Plaintiff's denial of

---

[8] Plaintiff's medical records also show that he was treated on November 29, 2008, at Vaughan Regional Medical Center for injuries sustained in an assault by other inmates. (Doc. 25, att. 6 at 5). As noted above, that incident and Plaintiff's medical treatment related thereto are not at issue in this case.

16

medical care claim still fails as a matter of law.

In this case, Plaintiff has failed to present any evidence, or even allege facts, showing that his foot fungus or his vague, unspecified neck and back problems constituted a "serious medical need." Hill, 40 F.3d at 1187. Thus, Plaintiff has failed to meet the objective element of his denial of medical care claim. Moreover, Plaintiff has failed to present any evidence, or even allege facts, showing that Defendants knew of an excessive risk to his health if these ailments went untreated, and they disregarded that risk by conduct that was more than mere negligence. Farrow, 320 F.3d at 1245-46. Thus, Plaintiff has failed to meet the subjective element of his denial of medical care claim. For each of these reasons, Plaintiff's claim based on Defendants' failure to provide medical treatment for his foot fungus and for back and neck problems associated with sleeping on a hard bedframe for eight days fails as a matter of law.

    C.    No Causal Connection.

In addition to the foregoing, Plaintiff's claims also fail as a matter of law because Plaintiff has failed to show how any named Defendant's actions contributed to the alleged deprivations. See LaMarca, 995 F.2d at 1538 ("[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation.") (internal quotation marks and citations omitted). Plaintiff merely states conclusorily that he was denied humane conditions of confinement and necessary medical treatment and asserts, equally conclusorily, that these Defendants are liable, without connecting any particular

17

Defendant to any particular unconstitutional conduct. Given the absence of evidence showing that any Defendant's actions contributed to Plaintiff's claims, each Defendant is entitled to judgment as a matter of law for this reason as well. See also Beard, 2008 WL 2754094 at *3("In the absence of an allegation of any connection between the actions of any Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against any named Defendant.").

## CONCLUSION

Based on the foregoing, the Court concludes that Defendants Roger Goodman, David Brown, Mike Rogers, Richard Waugh, Beandre Watts, Steve Coleman, and Dr. Chudy Okoye are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 19th day of April, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within **[fourteen days]**[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                /s/ Katherine P. Nelson
                                                                **UNITED STATES MAGISTRATE JUDGE**

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).